# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LORA A. POTTS-SHIPLEY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:12cv00406 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Lora A. Potts-Shipley brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Plaintiff filed her SSI and DIB applications on January 6, 2009, asserting that she has been under a "disability" since June 18, 2007. (*PageID##* 178-83, 184-92).  Plaintiff claims to be disabled due to "[b]i-polar [disorder], depression, anxiety, [and] back pain." (*PageID#* 226).

After various administrative proceedings, Administrative Law Judge (ALJ) Amelia G. Lombardo denied Plaintiff's applications based on her conclusion that Plaintiff's

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 56-64). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. This Court has jurisdiction to review the administrative denial of her applications. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. # 11), the administrative record (Doc. #6), and the record as a whole.

## II.     Background

### A.     Plaintiff's Vocational Profile and Testimony

Plaintiff was 38 years old on her alleged disability onset date, which defined her as a "younger individual" for purposes of resolving her DIB and SSI claims. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c)[2]; (*PageID##* 62, 221). Plaintiff attended school through the 10th grade, and has a "limited" education. *See* 20 C.F.R. § 404.1564(b)(3); (*PageID#* 232). She has past relevant employment as a food server, healthcare attendant, and childcare provider. (*PageID##* 62, 75-76, 227).

Plaintiff testified that she obtained her GED "a couple of years ago." (*PageID#* 75). Plaintiff testified that she did not like going to stores or being around people because it makes her anxious. She testified if she gets too overwhelmed, her anxiety worsens.

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

(*PageID#* 79). She also testified she took four Xanax a day. (*Id.*). She stated she tried to attend her son's school activities, but noted she "missed a lot of his games." (*PageID#* 82). She can perform some household chores (such as cleaning dishes, straightening up around the house, and washing laundry), but is often unable to finish such tasks, noting that "[i]t depends on the day." (*PageID#* 81).

She was self-employed in 2008 as a childcare worker. (*PageID#* 84). At the time of the hearing, she was employed on a part-time basis at a restaurant as a food server. She testified she needs to take several Xanax pills before her shift begins in order to tolerate the stress of work. (*PageID#* 85).

She stated she did not want to quit smoking because it might aid her in dying sooner. (*PageID#* 87). She stated she has thoughts of hurting herself and often gets into altercations with neighbors and friends. (*Id.*). She had difficulty keeping track of her infant grandchild, and maintaining attention while driving. (*PageID#* 88). She admitted that her hobby was shopping and that she was a compulsive shopper. (*PageID#* 89).

      B.    <u>**Vocational Expert Testimony**</u>

A Vocational Expert (VE) also testified at the administrative hearing. (*PageID##* 91-95). The VE was asked a hypothetical question about an individual of Plaintiff's age, educational background, and work experience, who was limited to light, unskilled, low stress work, with no assembly line production quotas, no fast pace, and minimal contact with the general public. (*PageID#* 93). The VE testified that a person with those limitations would be unable to perform Plaintiff's past relevant work, yet could still

3

perform jobs in the regional economy such as light cleaner, laundry folder, and garment folder. (*PageID##* 92-93).

When cross-examined by Plaintiff's counsel, the VE testified that if a person is limited in the ways described by Dr. Smith (in a Mental Residual Functional Capacity questionnaire he completed in January 2011), the hypothetical individual would not be able to maintain employment. (*PageID##* 94-95).

C. **Medical Opinions**

    1. **Mark Smith, M.D.**

Plaintiff began receiving mental health treatment at Clark County Mental Health Services in March 2005. (*PageID#* 373). The record contains treatment notes dated from January 30, 2009, to January 2011. (*PageID##* 428-65, 479-92, 529-40). Dr. Smith's clinical records show Plaintiff consistently presented as appropriately groomed and dressed; oriented; and focused. Records also show she had impaired concentration and memory; no hallucinations or delusions; abnormal affect (generally flat or constricted); a depressed mood; and good insight and judgment. (*PageID##* 431, 438, 441-45, 459, 462, 480, 484, 490, 538).

On February 27, 2009, Dr. Smith completed a questionnaire on behalf of the Bureau of Disability Determination (BDD). (*PageID##* 374-75). Dr. Smith reported that Plaintiff's mood showed anxiety and depression, without current mania, and her focusing and concentration were significantly impaired. (*PageID#* 374). She was able to care for herself, but was easily overwhelmed with stress of expectations – becoming anxious and

having escalating mood swings. (*Id.*). Dr. Smith further opined that she had problems being around people at work or trying to perform tasks, and was unable to tolerate stress or follow through with work assignments. (*PageID##* 374-75). Dr. Smith listed Plaintiff's diagnoses as bipolar disorder, panic disorder, and ADHD (attention deficit hyperactivity disorder). (*PageID#* 375).

On January 24, 2011, Dr. Smith reported that Plaintiff has been receiving treatment for bipolar disorder, panic disorder, and ADHD; she has a longstanding history of mood swings; has an impaired ability to focus and concentrate; is extremely distractible; is very easily overwhelmed; and has difficulty managing stress. Dr. Smith opined that her illness is chronic and will require ongoing psychiatric treatment, as well as psychotropic medications, for the rest of her life. Dr. Smith concluded that Plaintiff has made numerous efforts to return to school and maintain employment, but her illness has interfered with her ability to succeed in these efforts. He feels Plaintiff is unable to tolerate work stressors. (*PageID#* 525).

On January 24, 2011, Dr. Smith also completed a mental residual functional capacity assessment on Plaintiff's behalf. (*PageID##* 526-28). Dr. Smith opined that Plaintiff was extremely limited in her ability to accept instruction or respond appropriately to criticism from supervisors or superiors, and in her ability to maintain attention and concentration for more than brief periods of time. (*Id.*). Dr. Smith found that Plaintiff was markedly limited in her ability to do the following: work in coordination with, or in proximity to, others without distracting them or exhibiting behavioral extremes; respond

5

appropriately to co-workers or peers; relate to the general public and maintain socially appropriate behavior; perform and complete work tasks in a normal workday or week at a consistent pace; work in cooperation with, or in proximity to, others without being distracted by them; process subjective information accurately and use appropriate judgment; carry through with instructions and complete tasks independently; perform at production levels expected by most employers; respond appropriately to changes in work setting; remember locations, workday procedures and instructions; behave predictably, reliably and in an emotionally stable manner; and tolerate customary work pressures. (*Id.*).

### 2. Daniel Hrinko, Psy. D.

On April 8, 2009, Dr. Hrinko consultatively examined Plaintiff at the request of the Ohio BDD. (*PageID##* 386-89). Plaintiff noted she has been suffering from anxiety and depression since her early 20's. (*PageID#* 387). Plaintiff reported that she dropped out of high school due to low motivation. She also reported being in "learning disabilities classes throughout much of her school career due to problems with reading comprehension." (*PageID#* 386).

During the mental status examination, Dr. Hrinko noted that Plaintiff was appropriately dressed, cooperative, and tearful when discussing the death of her 19 month granddaughter. He also noted her speech was quiet in volume, sometimes slow, and appropriate in content. At the time of the evaluation, she had suicidal ideation; low energy; anxiety with no specific fears, phobias or experiences of panic; was alert and

oriented; and displayed no confusion or difficulties with concentration. Her insight was good. (*PageID## 387-88*). Dr. Hrinko estimated Plaintiff "possesses at least low average intellectual capabilities." (*PageID# 388*).

Plaintiff described her daily activities as taking care of her children and the home. She is able to shop, wash clothes, and perform all activities of daily living. She is able to drive, and continues to support her twelve-year-old son's sporting activities. Plaintiff reported that in the past few months prior to this evaluation, she has started to increasingly isolate herself by reducing her involvement with friends and other social activities. For recreation, she enjoys reading, as well as watching movies and television. (*PageID# 388*).

Dr. Hrinko diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and assigned her a Global Assessment of Functioning[3] (GAF) score of 55. (*PageID# 388*).

Dr. Hrinko opined that Plaintiff was mildly impaired in her abilities to do the following: relate to others, including co-workers and supervisors; maintain attention to perform simple and repetitive tasks; and to withstand stress and pressures of employment. He found Plaintiff was not impaired in her ability to understand, remember, and follow instructions. (*PageID## 388-89*).

### 3. Roseann Umana, Ph.D.

---

[3] Global Assessment of Functioning ("GAF") is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF score of 61-70 indicates that a person has only mild symptoms or some difficulty with social, occupational or school functioning, but such a person can generally function pretty well and have some meaningful interpersonal relationships. *Id.*

Dr. Umana reviewed the file on behalf of the Ohio BDD on April 11, 2009. (*PageID##* 391-405). Dr. Umana opined that Plaintiff was mildly restricted in her daily activities, had mild difficulties in her social functioning, and had moderate difficulties in her concentration, persistence, or pace. (*PageID#* 405). Dr. Umana found that Plaintiff was fully credible, and concluded that she was able to understand, remember and carry out simple instructions, as well as many that were more complex. Dr. Umana also found that Plaintiff's concentration and social functioning were adequate; her stress tolerance was limited; and she was able to adapt to work settings with routine and predictable duties. (*PageID#* 393). Another state agency psychologist, Irma Johnston, Psy.D. affirmed Dr. Umana's assessment on November 7, 2009. (*PageID#* 471).

### III. Administrative Review

#### A. "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

8

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

**B.     ALJ Lombardo's Decision**

ALJ Lombardo resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations. *See PageID##* 57-58; *see also* 20 C.F.R. § 404.1520(a)(4). Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff had the following severe impairments: lumbar degenerative disc disease and osteoarthritis, obesity, depression, and anxiety. (*PageID#* 59).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform light work. Due to her mental impairments, she is restricted to low stress work, which is defined as "not fast-paced and does not require assembly-line production quotas." (*PageID#* 60). The ALJ further found that Plaintiff is not capable of performing her past relevant work. (*PageID#* 62).

At Step 5, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.  (*PageID#* 63).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI.  (*PageID#* 64).

## IV.     Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.  **Discussion**

   A.  **The Parties' Contentions**

Plaintiff contends that the ALJ's decision was not supported by substantial evidence because: 1) the ALJ failed to test the consistent treating source opinions of Dr. Smith for controlling weight before weighing the other opinions as required by the treating source rule; and 2) the ALJ failed to provide good reasons for the weight assigned to Dr. Smith's opinions in further violation of the treating source rule. (Doc. #7, *PageID##* 566-73).

Plaintiff also contends that the ALJ failed to properly weigh the opinions of the non-examining state agency reviewers, and the ALJ's reliance thereof causes her decision to be unsupported by substantial evidence. (*Id., PageID#* 574). In addition, Plaintiff

11

argues that the ALJ failed at Step 2 to discuss the effects of Plaintiff's bipolar disorder and panic disorder. (*Id.*, *PageID#* 575).

The Commissioner contends that the ALJ did not err when rejecting Dr. Smith's opinions but instead properly evaluated his opinions as required by the Regulations. The Commissioner further argues, for numerous reasons, that the record supports the ALJ's rejection of Dr. Smith's opinions and that the ALJ properly relied on the opinions provided by psychologists Dr. Hrinko and Dr. Umana. (Doc. # 10, *PageID##* 588-601).

### B. <u>Treating Source Opinions</u>

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic

12

techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582 F.3d at 406, *quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In *Wilson*, 378 F.3d at 546, the Sixth Circuit noted that a treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record.

### C. Analysis

The ALJ began her discussion of the medical source opinions by indicating "[t]he undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (*PageID#* 60). In doing so, the ALJ identified the correct sources of the legal criteria applicable to evaluating medical source opinions.

The ALJ still was required to determine how much weight was appropriate "by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). The ALJ assigned "little weight" to Dr. Smith's opinions because: 1) she

13

believed that Plaintiff received no mental health treatment until after her initial denial for Social Security benefits; 2) she found it inconsistent with Plaintiff's history and actual activities; 3) she found it inconsistent with the third-party report from Plaintiff's mother; 4) she found it inconsistent with her records of treatment at the Mental Health Services for Clark County; and 4) Plaintiff has engaged in semiskilled employment since the alleged onset date, sometimes at the SGA level. (*PageID#* 62).

Even assuming she properly considered the "specialization" factor and "supportability" factor, the ALJ did not properly consider the length, nature and extent of Dr. Smith's treatment relationship with Plaintiff. *See Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). This is so because substantial evidence does not support the ALJ's factual finding that Plaintiff did not receive *any* mental health treatment until *after* her initial denial for Social Security benefits. In fact, the first sentence of the very exhibit the ALJ purportedly read and relied upon in making this finding actually notes that "Lora Shipley has been a patient of [Dr. Smith] since March 2005." (*PageID#* 525). Thus, the record before the ALJ clearly showed Plaintiff began receiving mental health treatment in 2005, approximately 4 years prior to even applying for benefits. (*PageID##* 313, 373).

By discounting Dr. Smith's opinions, in part, due to incorrectly addressing the length, nature and extent of his treatment relationship with Plaintiff, the ALJ does not appear to have given proper consideration to factors that the Commissioner has said <u>must</u> be taken into account in determining the weight given to the opinion of a treating physician. Specifically, the Regulations instruct as follows:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p (emphasis added). Because the ALJ did not heed this instruction, she did not apply the correct legal criteria to Dr. Smith's opinions, and her evaluation of those opinions thus constitutes an error of law. *See Bowen*, 478 F.3d at 746. Thus, the ALJ's decision to give "little weight" to Dr. Smith's opinion is unreasonable and unsupported by the evidence.

As Plaintiff correctly notes, the ALJ also erred by failing to mention or otherwise discuss her bipolar disorder and panic disorder. (Doc. #7, *PageID#* 569). Bipolar disorder was Dr. Smith's primary diagnosis, and something Plaintiff was receiving treatment for. (*PageID#* 375). It was also specifically listed by Plaintiff as an illness she believes limits her ability to work. (*PageID#* 226). Nonetheless, at Step 2, the ALJ concluded Plaintiff only had the following severe impairments: "lumbar degenerative disc disease and osteoarthritis, obesity, depression, and anxiety." (*PageID#* 59). Notably missing from this list of "severe" impairments, as well as the entire decision, is any mention or discussion of bipolar disorder and panic disorder.

Although the mere failure of an ALJ to consider a claimant's medically determinable impairment as "severe," instead of "nonsevere," may be found to be "legally

15

irrelevant," *see Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-191 (6th Cir. 2009), the same is not also true regarding an ALJ's total failure to consider an impairment. Defendant acknowledges the ALJ never expressly mentioned Plaintiff's bipolar disorder or panic disorder anywhere in her decision, yet nonetheless contends the ALJ must have considered these disorders because she cited to Dr. Umana's Psychiatric Review Technique, which did discuss such diagnoses.  (*PageID#* 407).  Problematic for Defendant, however, is that it does not appear the ALJ ever properly reviewed or fully considered Dr. Umana's notes.  Had the ALJ carefully considered – as opposed to merely cited to – Dr. Umana's Psychiatric Review Technique, it is hardly imaginable she would have still incorrectly concluded that "[t]he claimant received no mental health treatment until after her initial denial for Social Security benefits." (*PageID#* 62).  This is so because Dr. Umana's notes clearly indicate and discuss that Plaintiff has received mental health treatment as early as March 2005, and has a history of depression, anxiety, and concentration problems, as well as diagnoses of bipolar disorder and panic disorder. (*PageID#* 407).  Thus, how the ALJ could have simultaneously overlooked such a significant fact such as years of mental health treatment, while nevertheless being able to fully consider Plaintiff's bipolar disorder and panic disorder is without explanation by Defendant.  The ALJ simply fails to provide any indication she considered Plaintiff's bipolar disorder and panic disorder at any point in her sequential analysis.

Again, the ALJ did not simply miscategorize Plaintiff's bipolar disorder or panic disorder as "nonsevere" impairments, instead of "severe," rather, she appears not to have

provided any consideration to such impairments at any point in her decision. *Simpson* explains the regulatory basis for this error:

> Pursuant to 20 C.F.R. §[] 404.1523...: "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity ... we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."
>
> Pursuant to 20 C.F.R. §[] 404.1545(a)(2)...: "If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."

*See Simpson,* 344 Fed. Appx. at 191, n.1. Perhaps the ALJ may have reached the same conclusion even after considering Plaintiff's bipolar disorder and panic disorder, however, there is nothing to indicate such impairments were ever considered, and the Court will not speculate otherwise. An ALJ certainly is not required to discuss every piece of evidence submitted, but an ALJ is required to consider all of a claimant's medically determinable impairments. *See* 20 C.F.R. § 404.1545(a)(2). Considering the record, the ALJ should certainly have been aware of, and therefore considered, Plaintiff's bipolar disorder and panic disorder during her sequential analysis. Her failure to do so constitutes reversible error.[4]

## VI.  Remand is Warranted

---

[4] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions and evaluation is unwarranted.

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See id.* However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to problems discussed *supra*.

On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for DIB and SSI should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Lora A. Potts-Shipley was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be **TERMINATED** on the docket of this Court.


November 5, 2013

                                                                 s/Sharon L. Ovington
                                                                  Sharon L. Ovington
                                  Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).